Good morning, and may it please the Court. I'm Elizabeth Newman, representing Mr. Castagana. Your Honor, the Supreme Court has repeatedly said that an evil-meaning mind is presumed to accompany an evildoing hand. And the way the Supreme Court has applied that presumption shows that Mr. Castagana had to have intended that the circumstances be such that it might reasonably have been believed that the letters he sent contained anthrax. He had to have intended that the circumstances would have fostered the belief that his letters contained anthrax. When it says, though, under circumstances where such information may reasonably be believed, isn't that a typical statement of objective belief? In other words, wouldn't you normally look at what would a reasonable person believe under those circumstances? That's – that is how all of the parties phrased it below. If you look at the jury instructions proposed by the defense and the government and the one actually given by the court, they do say a reasonable person had to have believed it. But the issue in this case was, or at least as to the jury instruction, is did Mr. Castagana have intended for a reasonable person to have believed that? Well, I guess the question is, does that make any sense? I mean, when – if a reasonable person would not believe something or would believe something, intent really has – what's intended has almost nothing to do with application of that test. I'm not sure I see it that way, Your Honor, and I – although I agree that that's That would be the case in an ordinary situation with someone who didn't suffer from the extreme perceptual deficits that Mr. Castagana suffers from. But here, when you look at the way the Supreme Court has phrased its decision-making or applied its presumption of knowledge or intent in Excitement Video and Flores and going back to the way the Supreme Court has phrased its decision-making in Staples, Licorado and Morissette, then it – but particularly in Excitement Video and Flores, the court has said that the knowingness or the intendingness has to apply to the entire action, as Flores said. That's true. Of course, this may be dependent on the specific wording of the statutes, and that's – they don't have a phrase like this in the statutes that they're construing, and I just – it seems to me difficult to say that there has to be a subject of intent that some object of condition occur. But – so it seems to me that's a difficult way to read the statute. I concede that the Supreme Court has often applied to a series of clauses an intent requirement, but they didn't have anything quite comparable to this phrase. No, I agree with you. I think that's true. The Supreme Court has not faced a statute like this. But the principles, I think, are the same, and I think that if you don't apply the intent requirement, then you're potentially criminalizing what would be a otherwise innocent conduct. And that has been very, very clear in all of the Supreme Court's jurisprudence. If, for example, if you send the letter or convey the information not intending for a reasonable person to – Even though you say things like – but, you know, if you attach the intent to the – you know, a lot of people that do these sort of things, I think we can safely agree, sometimes they're not enjoying good mental health. Certainly, Mr. Castigliano did not. And – but the question is, if we allow the person without good mental health to control whether anyone else would be terrified by what they do, that it's somewhat – it seems to be inconsistent with what the statute says. I'm not sure. I respect the Court's point, but I'm not sure that – So when someone sends me something and it's got white powder in it and it says, and I'm going to kill you or something along those lines, and that's really Yes. I'm supposed to know that because the person is mentally ill and has a number of syndromes that I really shouldn't be scared or – No, Your Honor. I don't think there's anything that would prevent you from being scared. And, of course, anyone in, you know, the Court would be frightened as the people in this case would be. But then they can't be guilty of a crime because even though everyone else in the world would know that that's terrifying behavior, the fact that they don't know it. Right, Your Honor. Because it's like all of the other threat cases. When you look at the threat cases, what they say, at least recently after Black – Well, I know that's the way that you want it to be and that it makes some sense with people with mental illness, but we have to look to the statute and I just can't – I'm having a hard time finding that specific intent. It seems that you're – Well, let me see if this will help. If the Court looks at Virginia v. Black and the cases that interpret it, like Cassell, which was cited in our, I think, the reply brief, and also this – which is a Ninth Circuit case, and also this Court's decision in U.S. v. Stewart, what it says is that it's now quite clear since Virginia v. Black that a threat can't be a criminal threat. That is to say, a defendant can't be charged with having uttered a threat or conveyed a threat, but the defendant actually intended the menace inherent in that threat. So whether the recipient of the threat felt terror or not is only sort of one side of things. The defendant can't be criminally charged or criminally punished. Well, what's – Counsel, what's the point of making a hoax-type threat? This statute's designed to – it's aimed at criminalizing hoaxes. Yes. Right? Yes. So doesn't that distinction take it out of the normal type of threat cases where you're actually threatening real harm to somebody? I'm not sure I see the Court's distinction between threatening fake harm and threatening real harm. Is that – Well, it's – the whole point of this is that when a person puts white powder into – obviously, this was after 9-11. This is part of that legislation that grew out of all of those acts in the Anthrax scare and all of that. And the point was that they – that Congress wanted to stop hoaxes in large measure because of the diversion of public resources. Yes. For the hoax. And the legislative history is replete with that kind of analysis. Yes. And, in fact, it also – doesn't it also undercut your argument in some of the legislative history? For example, I guess Mr. Sensen – Senator Sensenbrenner or I guess Congressman Sensenbrenner says that this is – the purpose of this is to impose civil and criminal penalties to deter and punish a person for perpetrating a hoax that others could reasonably believe is and may be a biological, chemical, nuclear attack. So that lends support to the argument that Judge Candy was making that the first part of this is subjective intent, but the latter part of it is sort of an objective reasonableness standard. I see what the Court is saying, but the legislative history also says that this statute is directed against those who make threats that are designed to instill fear. And that, to me, is pretty – a pretty strong push that it's the person, the defendant charged himself, who must himself have designed it to instill fear. And if he didn't design it to instill fear, as was arguably the case in someone of Mr. Castigliano's mental makeup, then the statute can't be said to reach him, just as the statute that criminalizes a threat, which might also lead to a great expenditure in public resources. There's a – I think the Stewart case involved a threat against a district court judge, which I imagine involved quite a – an amassing of Federal resources. But if it's – if the defendant didn't intend that that should be the consequence, then he can't be criminally charged, because that's the essence of intent. You have to have intended the consequence. I think I'll reserve my last 13 seconds, Your Honor, for the questions. Good morning. Good morning. May it please the Court, Eileen Decker on behalf of the United States. The district court in this case properly instructed the jury. The three elements presented to the jury are those outlined specifically in the statute and are consistent with the language of the statute. If the government may first address Flores-Figueroa, which the defense brought up in its reply brief, a case that came out of the Supreme Court after the government's brief was submitted. Flores-Figueroa, as the Court's aware, is the latest from the Supreme Court on what the government is collectively referring to as the knowledge cases. Flores-Figueroa, liberata, excitement video, where the statute's read, whoever knowingly does the following acts. That case is greatly distinguishable from the situation before the Court, the specific statute before the Court. But even the judges in Flores-Figueroa stated, particularly in the concurring opinions, that the Court's opinion should not be interpreted as a normative description of what courts should ordinarily do when interpreting statutes. And Justice Alito stated, I'm concerned the Court's opinion may be read by some as adopting an overly rigid view of statutory construction. The statute in this case, however, is radically different from that presented in Flores-Figueroa. It's grammatically different, and the focus of the statute is different. In those cases, it's whoever knowingly. In this case, it's whoever engages in conduct with the intent to convey. Well, the nature of the crime is different, and we're talking about aggravated identity theft in Flores-Figueroa. And basically, that was where the Court said that you have to know that you're taking a real person's documents to commit that crime. That's different from the nature of the crime in this case. Absolutely. But even then, referring to the threats cases and Virginia v. Black that the defense counsel has brought up, I'd note something for the Court to take note of, that Virginia v. Black came out in, I believe it was 2003. Congress enacted this statute in 2004. Well aware that the Supreme Court had defined a subjective element to the threats in those statutes, here Congress made a very clear and specific language in the statute that under circumstances where the information reasonably believed, that from the perspective of the person receiving the hoax. Or a reasonable, a reasonable person would be. Reasonable person. Right. I mean, the person receiving it might not necessarily be scared. Oh, absolutely. But the reasonable, the standard reasonable objective person, yes. Okay. Yes. You both seem to agree that this, well, that there isn't anything specifically on point on this statute. Is that correct? Yes. So is this something that publication would be helpful to parties? Well, as a prosecutor, I do believe so. It would be helpful to parties. Well, if you win, yeah. I mean, probably either side, if they win, think that would be a good published opinion, right? Well, but having guidance from the Court on how to interpret, obviously there's a great difference of opinion between the parties, even before the district court, on the elements to provide. You also make the argument here that we should review this for plain error, that they didn't preserve the objection. I'm struggling with that from the standpoint, because they did propose an alternate jury instruction, and they did also put evidence of Asperger's syndrome on. You know, it certainly would seem that everyone was on notice that they didn't, you know, they didn't comply, they didn't, they lost on a point. They were trying to get another instruction, and it seemed to be the whole focal point of what they were trying to do. So I'm finding that perhaps falling in the pointless formality, you know, even though it's always better. But, you know, sometimes courts just get tired of you to continue to object. But, I mean, they certainly didn't roll over on this. No, and I understand that, Your Honor. But I've read through this record many times, as I'm sure that the Court has. And before trial, the issue before trial was the government was challenging just the presentation of the expert, to start with. The district court didn't have before that the defense was saying every element of this offense, we need to apply a subjective element to it. That argument was never made before court. During the trial, during the Rule 29 motion, the defense argued on the statute, on the elements that ultimately were decided by the court. But the alternative instruction they proposed had that, those elements in it. It did. So that's the question. It was never – well, certainly, and the government doesn't say that the defense did not present that to the court. However, when the court issued its – what it was going to present to the jury, the court said and invited the parties, here, take a look at this, I'm going to take a break. If you have any comments, objections, call me back in and we'll hear before we present or bring back the jury. And no objection was made. And what I'm arguing is that, based on the totality of the record, there was no presentation to the court that I want, from the defense perspective, I want a subjective element presented with every single one of these elements presented to the jury. That was never argued. It certainly was presented, but the logic behind it – By writing up a jury instruction and submitting it, that, I mean, that sort of puts what you think the law is in writing. It certainly does, but there was no objection. And Judge Cooper – But the court rejected it when it said, here's the instructions I'm going to give. It does seem to me that's being overly technical. Well, but I think when Judge Cooper said, I've incorporated some comments from the defense, the reasonable person perspective that the defense was – also had in its proposed instructions, and did not do the subjective – insert a subjective element to every single element, that the defense should have argued that, presented to the court the reasons why. It was never argued to Judge Cooper, and she never had a basis for understanding what their arguments were. Yes, they were – did present an expert, and they did ultimately argue that the jury should acquit if they – because he was not able to form the intent to commit this crime. They made all of those arguments in their closing as well, but they never presented to Judge Cooper the arguments that are pre-presenting before this Court so that she could logically balance and weigh their arguments. These specific arguments were never made, and I would suggest that in that context, it's simply not futile. I have more time for questions. There was a comment that, well, one of the things that was going on in the threat cases was a balance between First Amendment – somebody makes a public speech that includes, you know, I'm going to do something to the President, and they say, well, that's First Amendment expression if you didn't really intend to do it. And so that was the line. And I understood your opponent to say that, well, that's sort of – that really can be a balance between First Amendment and First Amendment, but it's not a crime, and indeed, it may even be a protected activity just to convey false information. And therefore, you – we would have to be careful about when not applying an intent requirement. Right. I think the limits that this statute places in the protections given are the reasonable person standard. For example, I think the Fogle case held by this Court in 2008, that's the case, I think, where the individual was riding around in a van saying, there's a bomb in my van, and – but it also was an expression of political statement, I hate the Patriot Act, words like that, that it was clear it was political satire, and the police officers who saw that van didn't feel threatened. And so – and the Court, in that opinion, found that the First Amendment implications weren't there, because the reasonable person would see this as political satire, and there would not be that threat element. So you're applying partly an objective test in that situation, you're saying, I think. Well, the other – I mean, the other thing is this prohibits conduct with intent to convey false or misleading information, doesn't it? Remove it from the First Amendment area. I'm sorry, Your Honor, I don't think I understand. The fact that this – the statute says whoever engages in any conduct with intent to convey false or misleading information, which a reasonable person would take to be a threat or whatever, a serious threat, as in here, right, the defendant put white powder in envelopes and mailed it to people. Right. So that's what was prohibited, not the message that he was sending. That's right. But it also, under circumstances where the threat would be – or the false information would reasonably be believed. I do believe, to answer what I think is the Court's question, that the statute contained within it does provide the protection for First Amendment – exercise of First Amendment speech, with both the reasonable person standard and the focus on the conduct as the Court has articulated. Thank you very much. Ms. Neumann. Thank you. Judge Callahan, I wanted to respond to something you commented to me during my earlier appearance up here, which is that, wouldn't it be difficult to prosecute someone who could just claim, well, I'm crazy?     It doesn't do that. It doesn't do that. It doesn't do that. The Supreme Court in Flores did say that, although the government in that case claimed that one reason to affirm its view of the statute in that case was that a contrary reading would cause significant barriers to enforcement, the Supreme Court did say that that could not be – that that simply wasn't good enough. And also, I wanted to briefly comment that Ms. Decker has spoken to the Court about the Fogle case, the man in the van saying, I hate the Patriot Act. But actually, there, that was not an objective standard. The Court expressly declined to decide whether that was subjective or objective, finding that the evidence was sufficient under either standard, the evidence of intent. Thank you. All right. Thank you, counsel. United States v. Casa Ignata is submitted.
judges: Canby, Wardlaw, Callahan